IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOLID WASTE SERVICES, INC., et al., | : | MISC. ACTION |
| Petitioners, | : | |
| | : | |
| v. | : | No.: 15-mc-264 |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE                                      January 12, 2016

      Presently before the Court are Solid Waste Services, Inc., FR&S, Inc., MRAC, Inc., and WPAC, Inc. ("Petitioners") Petition to Quash four summonses issued by the Internal Revenue Service ("IRS"), (Pet'rs' Pet. and Mem. of Law, ECF No. 1), and the United States of America's ("Respondent" or "the United States") motion to deny the petition to quash and summarily enforce the summonses, (Resp., ECF No. 4). The instant matter was referred to me for a Report and Recommendation by the Honorable C. Darnell Jones II. (Order, ECF No. 5). For the following reasons, I respectfully recommend that the petition to quash be **DENIED** and the motion to summarily enforce the summonses be **GRANTED**.

I.     BACKGROUND

      Petitioners in this matter are affiliated Pennsylvania corporations whose tax returns are presently under review by the IRS. (Pet. ¶¶ 6-7). In September 2010, IRS Revenue Agent Gerald Arnett ("Agent Arnett") commenced an examination of Petitioners' tax returns from 2007 through 2010 ("the First Examination"). (*Id.* ¶ 7); (Decl. of Revenue Agent Gerald Arnett ¶ 14,

ECF No. 4) (hereinafter, "Arnett Decl."). In the First Examination, Agent Arnett identified that Petitioners were engaged in a tax strategy "whereby various related entities loaned money to affiliated entities, who would then, on the same day or shortly thereafter, loan or contribute money back to the original lender." (Arnett Decl. ¶ 6). Petitioners took the position that these loans allowed the Petitioners to receive tax-free distributions from the entities.[1] (*Id.* ¶ 7). Agent Arnett gave these loans particular scrutiny because they did not conform to arms-length negotiating standards; ultimately, he determined that a number of distributions characterized as tax-free by Petitioners were, in fact, taxable income. (*Id.* ¶¶ 8-9).

Petitioners appealed Agent Arnett's determination to the IRS Appeals Office.[2] (*Id.* ¶¶ 10-11). The night before Agent Arnett's presentation to the IRS Appeals, Petitioners alerted him to a previously undisclosed 2008 royalty and land swap agreement (the "Pagoda Deal"). (*Id.* ¶ 12). According to Petitioners, the Pagoda Deal would allow MB Investments of Pennsylvania, an entity with few of its own assets, to repay millions of dollars of related-party loans. (*Id.* ¶¶ 12-13).

Agent Arnett investigated the Pagoda Deal because he believed it would be relevant to his examination of Petitioners' tax returns for years 2011 through 2014 ("the Second Examination"). (*Id.* ¶ 14). His investigation revealed that the "legitimacy and factual existence" of the Pagoda

---

[1] Generally, the receipt of a loan is not includable as gross income for federal tax purposes. *Karns Prime & Fancy Food, Ltd. v. C.I.R.*, 494 F.3d 404, 408 (3d Cir. 2007) (citing *Comm'r v. Indianapolis Power & Light Co.*, 493 U.S. 203, 207-08 (1990)). Because the recipient of the loan has an obligation to repay the amount loaned, loan proceeds are not income to the taxpayer. *Id.* (citing *Comm'r v. Tufts,* 461 U.S. 300, 307 (1983)).

[2] The IRS Appeals Office is independent from the Examination Division, where Agent Arnett is employed, and there are strict rules regarding *ex parte* communication between the Examination Division and IRS Appeals. (Arnett Decl. ¶ 11); *see also* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206 § 1001(a), 112 Stat. 685 (RRA); Rev. Proc. 2000–43, 2000–2 C.B. 404, *superseded by* Rev. Proc. 2012–18, 2012–10 I.R.B. 455.

Deal was in question. (*Id.* ¶ 15). Further, Agent Arnett learned that Petitioners had a lending agreement with Citizens Bank of Pennsylvania ("Citizens Bank" or "the Bank") which, in relevant part, required Petitioners to disclose all related-party transactions not conducted at arms-length, which would include the Pagoda Deal.[3] (*Id.*).

Accordingly, on November 13, 2015, Agent Arnett served four third-party summonses on Citizens Bank requesting production of the following documents by December 16, 2015:[4]

1. All documents constituting, consisting of, reflecting or relating to the agreement that the Borrowers submitted to a secure the loan/facility with the Bank

2. Pursuant to section 6.20 (Transactions with Affiliates) of the agreement

    All disclosures (and supporting documentation provided with the disclosure) by/for the borrowers on any transaction it entered into or conducted with any Affiliate pursuant to section 6.20 of the agreement

3. Pursuant to sections 8 (Accounting Records, Reports and Financial Statements), 8.1 (Annual Statements of Borrowers) and 8.4 (Audit Reports)

    I.  Borrower 3 reviewed financial statements in accordance with GAAP for their fiscal year ended September 30, 2014.[5]

    II. In the event there was non-compliance by the borrowers, all disclosures and/or documents provided to the bank by the borrowers associated with not complying with providing financial

---

[3] The lending agreement at issue is between Citizens Bank and Solid Waste, White Pines Corporation, FR&S, and American Compost Corporation, dated December 9, 2011. (Pet. Ex. A at 2).

[4] The four summonses are identical, but each is specifically directed to one of the four Petitioners. (Arnett Decl. ¶ 18).

[5] "Borrower 3" is defined in the summonses as Petitioner FR&S, Inc. (Pet. Ex. A at 2).

        statements in accordance with GAAP within two hundred and ten (210) days after the end of each of the borrowers [sic] fiscal years.

    III. Any management letters and "comment" letters, in connection with the annual, interim or special audit report, submitted to the borrowers by independent accountants and/or submitted by the borrowers to the independent accountants.

(Pet. ¶¶ 8-9; Arnett Decl. ¶ 19). Citizens Bank requested an extension of time to respond, and, to date, has not provided any responsive documents. (Arnett Decl. ¶¶ 22-23).

  On November 13, 2015, Agent Arnett sent notice of the summonses through certified mail to Petitioners' counsel. (*Id.* ¶ 22). On December 3, 2015, Petitioners filed the pending motion to quash the four summonses executed on Citizens Bank. (Pet., ECF No. 1). In response, the United States moves for summary denial and dismissal of Petitioners' motion to quash and for summary enforcement of the summonses. (Resp., ECF No. 4). The matter is fully briefed and ripe for determination.[6]

## II. LEGAL STANDARD

  "Congress has 'authorized and required' the IRS 'to make the inquiries, determinations, and assessments of all taxes' the Internal Revenue Code imposes." *United States v. Clarke*, ––– U.S. –––, 134 S. Ct. 2361, 2365 (2014) (quoting 26 U.S.C. § 6201(a)). In support of that authority, section 7602 of the Internal Revenue Code permits the IRS broad latitude to issue summonses "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . ., or

---

[6] Petitioners filed a request for oral argument on its Petition to Quash. (Pet'rs' Mem. of Law 1, ECF No. 1). As is within the Court's discretion, I dispose of this Motion without oral argument. *See* Local Rule 7.1(f).

collecting any such liability." 26 U.S.C. § 7602(a). The IRS may summon either the person liable for the tax or "any officer or employee of such person," any person having custody of relevant "books of account," and "any other person the [IRS] may deem proper," § 7602(a)(2), to produce "books, papers, records, or other data . . . relevant or material to [a tax] inquiry," § 7602(a)(1).

If a taxpayer wishes to prevent a third party from complying with IRS summons, the taxpayer must begin a proceeding to quash the summons. 26 U.S.C. § 7609(b); *see also Nelson v. I.R.S.*, No. 10-184, 2011 WL 39060, at *1 (E.D. Pa. Jan. 5, 2011) (citing *Gaunt v. Internal Revenue Serv.*, 1996 WL 376341, at *1 (M.D. Pa. May 1, 1996)). Once the legality of a summons is questioned, it is the burden of the IRS to demonstrate the following: (a) the summons was issued for a legitimate purpose; (b) the summons sought information that may be relevant to that purpose; (c) the information sought was not already within the possession of the IRS; and (d) all administrative requirements were met. *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also United States v. Rockwell Int'l*, 897 F.2d 1255, 1261 (3d Cir. 1990). The IRS's initial burden is only slight or minimal, and can be satisfied by a declaration from the investigating agent that the requirements of *Powell* have been met. *See Clarke*, 134 S. Ct. at 2365 (to make the *Powell* showing, "the IRS usually files an affidavit from the responsible investigating agent.") (internal citation omitted); *Pilchesky v. United States*, No. 3:08-MC-0103, 2008 WL 4452672, at *3 (M.D. Pa. Sept. 29, 2008) (internal citations omitted).

Once the government satisfies its *prima facie* burden, the burden then shifts to the taxpayer to "challenge the summons on any appropriate ground." *Rockwell Int'l*, 897 F.2d at 1262 (citing *Powell*, 379 U.S. at 58); *see also Clarke*, 134 S. Ct. at 2365. An "appropriate ground" is established "when the taxpayer disproves one of the four elements of the government's *Powell*

showing, or otherwise demonstrates that enforcement of the summons will result in an abuse of the court's process." *Rockwell Int'l*, 897 F.2d at 1262. "This standard is described as a 'heavy burden,' one that is only satisfied under the most 'exceptional circumstances.'" *Bodensee Fund, LLC v. U.S. Dep't of Treasury-I.R.S.*, No. 07-0111, 2008 WL 1930967, at *2 (E.D. Pa. May 2, 2008) (citing *Pickel v. United States*, 746 F.2d 176, 183-85 (3d Cir. 1984) and *United States v. Smith*, No. 99–3953, 2000 WL 1175543, at *1 (6th Cir. Aug. 11, 2000)).

### III.   DISCUSSION

#### A.   Respondent Has Made Its *Prima Facie* Case

In support of its *prima facie* case, Respondent has provided the declaration of Agent Arnett, a duly commissioned Revenue Agent employed by the IRS in the Large Business and International Division. (Arnett Decl. ¶ 2). As noted, Agent Arnett is presently engaged a multi-year review of Petitioner's tax returns. (*Id.* ¶ 4). In furtherance of that examination, Agent Arnett served summonses on Citizens Bank on November 13, 2015. (*Id.* ¶ 16). A notice of the summonses was also sent to Petitioners' counsel on that date. (*Id*. ¶ 23).

Agent Arnett asserts that he issued the summonses for the legitimate purposes of determining the correctness of Petitioners' tax returns and/or determining Petitioners' tax liability, and the information and documents sought by the third-party summonses is relevant to that legitimate purpose. (*Id*. ¶ 25). Declarant further asserts that, although certain loan documents related to the lending agreement with Citizens Bank have produced by Petitioners, the information and documents summonsed are not already in possession of the IRS. (*Id.* ¶¶ 28-32). Specifically, Agent Arnett avers that the IRS does not have copies of the disclosures made by Petitioners to obtain the loan and the 2014 reviewed financial statements, which, by the terms of

the agreement, should have already been produced. (*Id.* ¶¶ 29, 31). Agent Arnett also explains that he seeks to compare the versions of documents produced by Petitioners with the versions maintained by Citizens Bank. (*Id.* ¶ 30, 32). Finally, Agent Arnett avers that no Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect with respect to Petitioners for the tax years under investigation. (*Id.* ¶ 34).

Accordingly, Revenue Agent Arnett's declaration establishes that: (1) the summonses served on Citizens Bank were issued for the legitimate purpose of determining Petitioners' federal income tax liabilities or ascertaining the correctness of their returns; (2) the records sought by the summonses might shed light on those issues and are therefore relevant to the purpose of Respondent's investigation, (3) the information and documents sought by the summons were not already in the IRS's possession when the summons was issued, and (4) the administrative steps required by the Internal Revenue Code were followed.

The Court finds that Respondent has established a *prima facie* case in support of the summonses issued to Citizens Bank and has therefore met the government's initial burden. The burden shifts to Petitioners to show an appropriate ground for why the summonses should not be enforced, either by disproving one of the four *Powell* elements, or by otherwise demonstrating that enforcement of the summons will result in an abuse of the Court's process.

**B.      Petitioners Have Not Shown the Summonses Should be Quashed**

Petitioners argue that the summonses should be quashed because: (1) the summonsed information is already in possession of this IRS; (2) the summonses are overbroad; (3) the IRS has demanded irrelevant information; and (4) the IRS has failed to act in good faith.[7] (Pet. ¶ 12;

---

[7] Petitioners also assert that "upon information and belief the Summonses were not properly served and have not been received by Citizens." (Pet. ¶ 11). They do not further develop this argument in their petition or memorandum of law; accordingly, it is waived. *See*

Pet'rs' Mem. of Law 11-22).   As set forth below, Petitioners have not sustained their heavy burden of showing appropriate ground for why the summonses should not be enforced.

### 1. Information Already in Possession of the IRS

Petitioners argue that the IRS already possesses all of the documents related to Petitioners' loan/facility with Citizens Bank, which is requested in Section One of the summonses.   (Pet. ¶¶ 13-18; Pet'rs' Mem. of Law 11-12).   According to Petitioners, on October 20, 2014, Solid Waste Services provided the IRS with an electronic copy of its credit line agreement with Citizens Bank dated December 9, 2011, as well as the First Amendment and Modification to the Loan Agreement dated December 6, 2012, which were previously produced in response to an to an Information Document Request ("IDR").   (Pet'rs' Mem. of Law 11).   Because the IRS acknowledged receipt of the documentation and closed the IDR on November 5, 2014, Petitioners contend this "is a clear admission the IRS has in its possession the loan agreement demanded in Section 1 of Exhibit A of each Summons."   (*Id.* at 13).

Respondent argues that the summonses seek information not in the IRS's possession; namely, *all* documents submitted by Petitioners to Citizens Bank in relation to the loan or required by its terms, as well as any documents produced by Citizens Bank with respect to the loan.   (Resp. 12-13).   In support of this argument, Respondent relies on Agent Arnett's testimony that the loan

---

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").   In any event, Petitioners lack standing to challenge third-party summonses on the basis of defective service.   *See, e.g.*, *Wilde v. United States*, 385 F. Supp. 2d 966, 968 (D. Ariz. 2005) ("Petitioner lacks standing to challenge service of the summons on the third-party record keeper."); *Wright v. United States*, 964 F. Supp. 336, 338 (M.D. Fla. 1997) (petitioner's objection to service by mail of IRS summons on third-party record keeper rejected for lack of standing), *aff'd*, 132 F.3d 1461 (11th Cir. 1997) (Table).   However, even considering this argument, it is without merit.   The summonses evidently *were* received by Citizens Bank, as the Bank responded by requesting additional time.   (Arnett Decl. ¶ 20).

documents supplied by Petitioners do not encompass all of Citizens Bank's loan files, and that any duplicative documents that may be produced are valid for the purposes of comparison.  (Arnett Decl. ¶¶ 26-31).

I find that Petitioners have not sustained their heavy burden of demonstrating that the IRS already possessed the loan facility information requested in Section One of the summonses.  First, the fact that *Petitioners* supplied certain loan documents in their possession in response to the IDR does not demonstrate that the IRS was in possession of the loan information maintained by *Citizens*.  For instance, Agent Arnett testified that the IRS does not have copies of the disclosures made to Citizens to obtain the loans, nor does it have the 2014 audited financial statements which, according to the loan arrangement, should have already been submitted.  (*Id.* ¶¶ 28-31).  Second, to the extent that Citizens Bank may produce duplicative information in response to the summonses, it is well-established that the IRS is entitled to information from a variety of sources to develop a complete picture of relevant transactions.  *See Superior Trading, LLC v. U.S., Dep't of the Treasury-Internal Revenue Serv.*, No. 07-MC-195, 2008 WL 5192379, at *5 (M.D. Pa. Dec. 11, 2008) (citing *Cohen v. United States*, 306 F.Supp.2d 495, 504 (E.D. Pa. 2004)).  In this case, Agent Arnett has explained that he seeks to compare the versions of the loan documents maintained by Citizens Bank to determine if they were identical to the versions provided to him by Petitioners.  (Arnett Decl. ¶¶ 30, 32).

Accordingly, I find that the summonses properly seek information not in the IRS's possession, and Petitioner's arguments to the contrary are unpersuasive.  I recommend that Petitioners' motion to quash on this basis be denied.

### 2. Breadth

Next, Petitioners argue that summonses should be quashed because the requests for "all documents . . . submitted to secure" its loan with Citizens Bank, and for "all disclosures (and supporting documentation . . . )" made by Petitioners on any transaction entered into or conducted with any affiliate pursuant to the loan agreement are overly broad. (Pet. ¶¶ 19-37; Pet'rs' Mem. of Law 12-14). The United States responds that Petitioners do not have standing to raise this challenge, and, in any event, the summonses are sufficiently specific. (Resp. 13-14).

An IRS summons is overbroad if "it does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons." *United States v. Medlin*, 986 F.2d 463, 467 (11th Cir. 1993) (quoting *United States v. Wyatt*, 637 F.2d 293, 392 n.16 (5th Cir. 1981)). Recently, the United States Court of Appeals for the Eleventh Circuit held that "[b]ecause an overbreadth challenge is about the ability of the summonee to comply, not about the scope of the documents requested, the taxpayer lacks Article III standing to bring an overbreadth challenge to a third-party summons." *Miccosukee Tribe v. United States*, 698 F.3d 1326, 1332 (11th Cir. 2012). The Court in *Miccosukee* explained that because the taxpayer was not the party obligated to respond to a vague or indeterminate request served upon a third-party record holder, the taxpayer could not demonstrate that he suffered the actual injury necessary to give rise to Article III standing. *Id.* ("[A] taxpayer suffers no injury when a summons is difficult to comprehend, unless the summons is issued to him.") (internal citation omitted).

I find the reasoning of *Miccosukee* persuasive and agree with Respondent that Petitioners do not have standing to challenge the summonses on the grounds of over-breadth. Although the Third Circuit has not issued a precedential decision on this issue, at least one other district court in this Circuit has suggested that a taxpayer lacks standing raise such an objection. *See United*

*States v. First Pennsylvania Bank*, 453 F. Supp. 457, 461 (E.D. Pa. 1978) ("Since the summons was directed to the Bank and not to [the taxpayer], it would appear that he lacks standing to question the breadth of the summons."). Other courts have similarly held that a taxpayer lacks standing to challenge a third-party IRS summons on the basis of breadth. *See, e.g.*, *Fisher v. United States*, 676 F. Supp. 2d 1165, 1171 (W.D. Wash. 2009); *Wright v. United States,* 964 F. Supp. 336, 338 (M.D. Fla. 1997); *Wallace v. United States*, No. 90–F–1000, 1990 WL 165289, at *2 (D. Colo. Sept. 19, 1990); *King v. United States*, 684 F. Supp. 1038, 1041 (D. Neb. 1987) (reviewing legislative history and explaining that grant of authority to stand in the shoes of the third-party record keeper is limited in that the petitioner will "not be permitted to assert defenses to enforcement issues which only affect the interests of the third-party record keeper," including the defense of undue burden) (quoting Senate Rpt. No. 938, 94th Cong. 2d Sess. 370–71 (1976)). In light of the foregoing, I conclude that Petitioners lack standing to assert that the summonses must be quashed as overly-broad.

Even assuming that Petitioners have standing to challenge the breadth of the summons, I do not find the summonses in this case to be overbroad. Petitioners argue that the requests for "all records" relating to the loan facility and "all disclosures" related to affiliate transactions does not allow Citizens Bank to "properly identify responsive information with any reasonable certainty." (Pet. ¶ 21; Pet'rs' Mem. of Law 13-14). In support, Petitioners rely largely on *United States v. Klir*, which found the following request to be overly broad: "all information which would be necessary to enable a representative of the IRS to properly determine total income earned or sources of funds received." 47 AFTR 2d 81–1399, (E.D. Tex. 1979), *aff'd by unpublished order*, 644 F.2d 33 (5th Cir. 1981). Specifically, the Court in *Klir* reasoned that language in the

11

summons would require the third-party record-holder to determine whether documents were relevant, making enforcement proceedings impossible.  *Id.* at 81-4100.

Petitioners' reliance on *Klir* is misplaced.  The document requests at issue in this case are substantially different from the request held to be overly broad in *Klir*.  The summonses issued on Citizens Bank in this matter specify the documents required and describe them with sufficient particularity; namely, the IRS seeks Citizens Bank's file on a specific loan facility dated December 9, 2011, as well documents pertaining to transactions with affiliates allowed by Section 6.20 of that agreement.  The fact that the IRS seeks *all* documents submitted to secure the loan and *all* documents related to affiliate transactions pursuant to the loan does not mean that the requests in the summonses are overly broad.  *See Bodensee Fund, LLC v. United States*, No. 07-3209 (MCL), 2008 WL 4490361, at *5 (D.N.J. Sept. 30, 2008) (request not overly broad merely because it requests "all" of specified type of document); *see also Sugarloaf Funding, LLC v. U.S. Dep't Of The Treasury*, 584 F.3d 340, 348 (1st Cir. 2009) (where use of the term "all documents" is limited by reference to particular subject matters, summonses are not overly broad).  The requests challenged by Petitioners specifically advise Citizens Bank of what is required to respond, and the requests are sufficiently tailored so that the Bank will be able to do so adequately.

Accordingly, I recommend that Petitioners' motion to quash on the basis that the summonses are overly broad be denied, as Petitioners lack standing to raise such a challenge and the summonses are not overly broad.

### 3. Relevance

Next, Petitioners contend that the summonses should be quashed because Section Two and subparts (ii) and (iii) of Section Three seek irrelevant information.  (Pet. ¶¶ 29-37; Pet'rs' Mem. of Law 14-16).  Specifically, Petitioner contends that the affiliate loan documents requested in

Section Two are not relevant to the examination of Petitioners' tax returns because, to the extent such documents exist, they "will not bear on any item of income or expense" reported by Petitioners.[8]  (Pet'rs' Mem. of Law 14).   Petitioner also argues that the request in Section Three for documents and disclosures related to non-compliance with the loan "impermissibly intrudes on the bank's business judgment routinely exercised in the course of its non-tax business dealings" with Petitioners, and any communications between the Bank and Petitioners regarding non-compliance is wholly irrelevant to the tax issue under examination.   (*Id.* at 16).   The United States responds that the summonsed documents may shed light on the IRS's investigation of the Pagoda Deal and the correctness of Petitioners' tax returns.   (Resp. 8-9, 15).

The IRS has the authority to "examine any books, papers, records, or other data which may be relevant" to determining tax liability.   26 U.S.C. § 7602(a)(1).   When evaluating the relevance of summoned information, courts apply a deferential standard of review that permits any document that "might throw light upon the correctness of the return."   *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 n.11 (1984) (quoting *United States v. Harrington,* 388 F.2d 520, 524 (2d Cir. 1968)).   The standard requires only a showing of potential relevance because the IRS "can hardly be expected to know whether such data will in fact be relevant until they are procured and scrutinized."   *Arthur Young & Co.,* 465 U.S. at 814 (citation omitted).

The documents and information requested in Section Two of the summonses, which pertain to affiliate transactions, are relevant to the IRS' investigation under this lenient standard. As noted, Agent Arnett disallowed a number of related-party loans in the First Examination on the

---

[8] Petitioners present this relevance challenge within their argument that the request for all documents pertaining to affiliate transactions is overly broad.   However, "[a]n overbreadth challenge is distinct from a relevance challenge."   *Miccosukee Tribe*, 698 F.3d at 1332. Accordingly, I address Petitioners' contentions regarding the relevance of the affiliate transactions with Petitioners' other relevance arguments.

13

basis that they were not true loans, which resulted in taxable income to Petitioners. (*Id.* ¶ 9). The Third Circuit has explained that for a transaction to qualify as a loan, there must be "an unconditional obligation on the part of the transferee to repay the money, and an unconditional intention on the part of the transferor to secure repayment." *Merck & Co. v. United States*, 652 F.3d 475, 481 (3d Cir. 2011) (quoting *Geftman v. Comm'r*, 154 F.3d 61, 75 (3d Cir. 1998)). To the extent a borrower is unable to repay the loan when the funds were advanced, this may indicate that the parties did not intend a bona fide loan. *See e.g.*, *Commissioner v. Makransky*, 321 F.2d 598, 600 (3d Cir. 1963) (explaining that a transaction is a loan only if entered into with intention that money advanced would be repaid; if the borrower was unable to repay when the funds were advanced, it suggests that the parties did not intend a bona fide loan). Following Agent Arnett's First Examination, Petitioners informed him of the existence of the Pagoda Deal, which would allow for the repayment of certain of loans. (Arnett Decl. ¶ 12). To the extent the Pagoda Deal provides for the ability to repay, or demonstrates the intent to do so, it may be relevant to determining whether the transactions disallowed by Agent Arnett were in fact loans and thus is relevant to Petitioners' potential tax liability.

However, Agent Arnett has reason to believe that the Pagoda Deal is not legitimate. (*Id.* ¶ 15). The loan agreement with Citizens Bank requires Petitioners to disclose all related-party transactions that were not conducted at arm's length, which would include the Pagoda Deal. (*Id.*). Whether Petitioners disclosed the Pagoda Deal to Citizens Bank pursuant to the terms of their loan agreement could shed light on whether the deal is legitimate or illusory. (Resp. 15). Accordingly, I find that the information requested in Section Two of the summonses is relevant to the issue of determining Petitioners' tax liability.

14

Petitioner also contends that the financial and auditing information requested in subparts (ii) and (iii) of Section Three of the summonses impermissibly intrudes into their business relationship with their lender and has no bearing on the tax issues under examination. (Pet'rs' Mem. of Law 16). I disagree. As noted, the threshold the IRS must meet to demonstrate the relevance of the summonsed information is low; namely, "whether the inspection sought might have thrown light upon the correctness of the taxpayer's returns." *See Arthur Young & Co.,* 465 U.S. at 814 n.11. "The question is whether the 'might' in the articulated standard, 'might throw light upon the correctness of the return,' is in the particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered." *Harrington*, 388 F.2d at 524. In this case, the United States has articulated that the financial and auditing statements summonsed from Citizens Bank are relevant because these documents could differ from documents provided by Petitioners, thus providing a point of comparison. (Resp. 15). Thus, even though these documents may reveal information about Petitioners' relationship with their lender, they may shed light on an issue in the tax investigation and are, therefore, relevant.

Accordingly, Petitioners have failed to rebut Respondent's demonstration that the summonsed documents are potentially relevant.

### 4. Bad Faith

Lastly, Petitioners contend that the summonses should be quashed because the IRS failed to act in good faith. (Pet'rs' Mem. of Law 16-21). The crux of Petitioners' argument is that the IRS acted in bad faith because the IRS failed to follow several internal policies and procedures indicating that collecting information from taxpayers is preferable to resorting to third-party summonses. (*Id.* at 17-18). Respondent contends that the failure of the IRS to comply with its own internal policies and procedures is not cause to quash a summons under *Powell*. (Resp. 16).

The United States alternatively argues that the policies and procedures cited by Petitioners are irrelevant to the third-party summonses at issue here, (Resp. 16 n.3); that any noncompliance with those policies and procedures was minimal, (*id.* at 16-17); and that Petitioners have failed to rebut the United States *Powell* showing that the summonses were legitimately issued, (*id.* at 17-18).

The Third Circuit explained in *Rockwell* that the good faith inquiry inheres in the *Powell* consideration of a legitimate investigative purpose, or, in other words, "the requirement of legitimate purpose means nothing more than that the government's summons must be issued in good faith pursuant to one of the powers granted under 26 U.S.C. § 7602." 897 F.2d at 1262. In considering bad faith under *Powell,* the Third Circuit has instructed that "where the taxpayer can prove that the summons is issued solely to harass him, or to force him to settle a collateral dispute, or that the IRS is acting solely as an information-gathering agency for other departments, such as the Department of Justice, or the FBI, the summons will be unenforceable because of the IRS's bad faith." *Pickel v. United States,* 746 F.2d 176,185 (3d Cir. 1984) (reversing district court's quashing of IRS summons, where petitioners did not present evidence of bad faith) (citations omitted).

In this case, Petitioners have not persuaded the Court that the IRS acted in bad faith with regard to its investigation of Petitioners. Petitioners allege that the IRS failed to follow a provision of the Internal Revenue Manual, which instructs that revenue agents should attempt to obtain information from taxpayers voluntarily before resorting to the issuance of summons, as well as policy directives emphasizing the importance of communication between agents and taxpayers under investigation and narrowly tailoring the issues in IDRs. (Pet'rs' Mem. of Law 17-19). Even assuming that these policies and provisions pertain to the issuance of third-party summonses — which Respondent disputes — "*Powell* requires only that the IRS comply with all the

16

administrative steps required by the Internal Revenue Code. Therefore, any failure by the IRS to comply with its own internal procedures is not cause to quash a summons." *Frost Nat'l Bank v. United States*, No. SA-05-CA-215-FB, 2005 WL 4135434, at *4 (W.D. Tex. Aug. 17, 2005), *report and recommendation adopted*, (W.D. Tex. Mar. 2, 2006); *see also Radford v. United States*, No. 3-84-0241, 1984 WL 274, at *4 (M.D. Tenn. Apr. 10, 1984) ("Any deviation from the procedures set-forth in the Internal Revenue Manual does not preclude enforcement of the summons"); *United States v. Price Waterhouse & Co.*, 515 F. Supp. 996, 999 (N.D. Ill. 1981) (construing *Powell* as requiring IRS summonses to comport only with Code-imposed administrative procedures and not those established by IRS' informal guidelines). Indeed, it is well-established that "internal rules of agency procedure" are distinct from "regulations promulgated pursuant to statutory directive" in that they do not confer "substantive rights or privileges upon taxpayers." *Groder v. United States*, 816 F.2d 139, 142 (4th Cir. 1987) (citing *U.S. v. Caceres*, 440 U.S. 741 (1979)); *Matter of Carlson*, 126 F.3d 915, 922 (7th Cir. 1997) ("Procedures in the Internal Revenue Manual are intended to aid in the internal administration of the IRS; they do not confer rights on taxpayers."); *United States v. Will*, 671 F.2d 963, 967 (6th Cir. 1982) ("[A] guideline, adopted solely for the internal administration of the IRS, rather than for the protection of the taxpayer, does not confer any rights upon the taxpayer."); *Ruscitto v. United States*, No. 11-824, 2014 WL 2504578, at *10 (W.D. Pa. Apr. 1, 2014), *report and recommendation adopted*, No. 11-824, 2014 WL 2504581 (W.D. Pa. May 30, 2014), *aff'd*, No. 14-3446, 2015 WL 7423811 (3d Cir. Nov. 23, 2015) (noncompliance with the Internal Revenue Manual "does not render an action of the IRS invalid."). Thus, in *Groder*, the Fourth Circuit explained that "the violation of a guideline," is, by itself, "without legal effect to quash summons .

. . ." 816 F.2d at 142. Accordingly, any claimed failure of the IRS to comply with its own internal guidelines is not grounds to quash the summonses.

In the alternative, Petitioners assert that IRS acted in bad faith by requesting production of the 2014 financial statements because, due to Petitioners' response to an IDR, it should have known that the 2014 audited financial statements were not available at the time of the summonses. (Pet'rs' Mem. of Law 21). Respondent has explained that based on the lending agreement, the 2014 audited financial statements should have been provided to the Bank by the time of the summonses. (Arnett Decl. ¶ 31). Therefore, the IRS did have reason to believe that Citizens Bank might have been in possession of the requested documents, and it did not act in bad faith merely because it declined to defer to Petitioners' representations to the contrary. Lastly, Petitioners argue that the summonses were issued in bad faith to harass and embarrass Petitioners, and to imperil their relationship with their lender. This unsupported allegation does not satisfy Petitioners' heavy burden of disproving the actual existence of a legitimate government purpose for serving the summonses on a third-party record keeper. *See La Salle*, 437 U.S. at 316.

According, Petitioners' assertion that the IRS acted in bad faith lacks merit. I recommend that the Petition to quash on this basis be denied.

## IV.    CONCLUSION

For the reasons set forth in the foregoing memorandum, I find that the Petition to Quash should be denied and the Respondent's Motion for Summary Denial of Petition to Quash and for Summary Enforcement should be granted. Therefore I make the following:

## RECOMMENDATION

AND NOW, this <u>  12th  </u> day of January, 2016, **IT IS RESPECTFULLY RECOMMENDED** that Petitioners' Petition to Quash Summonses (ECF No. 1) be **DENIED** and the Respondent's Motion for Summary Denial of Petition to Quash and For Summary Enforcement of IRS Summonses (ECF No. 4) be **GRANTED**.

BY THE COURT:

 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE